**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CENTRAL AMERICAN RESOURCE CENTER, *et al.,* <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH T. CUCCINELLI, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:20-cv-2363 (RBW) |

**MEMORANDUM OF LAW OF AMICUS CURIAE IMMIGRATION REFORM LAW
INSTITUTE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Christopher J. Hajec (D.C. Bar No. 492551)
Gina M. D'Andrea (D.C. Bar No. 1673459)
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
Fax: (202) 464-3590
Email: chajec@irli.org

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................ii

IDENTITY AND INTEREST OF AMICUS CURIAE ...........................................................1

INTRODUCTION .................................................................................................................1

SUMMARY OF ARGUMENT ..............................................................................................2

ARGUMENT .........................................................................................................................3

    I.    The Plain Language of the INA Makes Clear That Temporary Protected Status Does Not Provide a Mechanism for Adjustment of Status. .....................................................3

    II.    The USCIS Guidance is Exempt From Notice and Comment Rulemaking Procedures Under the Administrative Procedure Act. ............................................................6

CONCLUSION .......................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Barton v. Barr*, 140 S. Ct. 1442 (2020) .......................................................................4

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).................4

*Croplife Am. v. EPA*, 356 U.S. App. D.C. 192, 329 F. 3d 876 (D.C. Cir. 2003)..........7

*Duron v. Stul*, 724 F. App'x 791 (11th Cir. 2018) ........................................................4

*Fla. Power & Light Co. v. EPA*, 330, U.S. App. D.C. 344, 145 F.3d 1414 (D.C. Cir. 1998) ........7

*Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Com.*, 874 F.2d 205 (4th Cir. 1989) ...........7

*K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988).................................................. 3, 5

*King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991) .........................................................3

*Melendez v. McAleenan*, 928 F.3d 425 (5th Cir. 2019) ................................................6

*Negusie v. Holder*, 555 U.S. 511, (2009)......................................................................5

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987).......................................................3

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ...........................................................3

*Serrano v. United States AG*, 655 F.3d 1260 (11th Cir. 2011) .....................................6

*Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87 (1995). .....................................7

*Varity Corp.* v. *Howe*, 516 U.S. 489 (1996) ..................................................................5

*Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650 (D.C. Cir. 2011). .................4

**Statutes**

5 U.S.C. § 553(b)(A) ......................................................................................................6

8 U.S.C. § 1254a(b)........................................................................................................2

8 U.S.C. § 1254a(c)(2)(B)..............................................................................................3

8 U.S.C. § 1254a(c)(5)....................................................................................................4

8 U.S.C. § 1254a(e) ....................................................................................................... 3

8 U.S.C. § 1254a(f)........................................................................................................ 2

8 U.S.C. § 1254a(f)(3) ................................................................................................... 5

8 U.S.C. § 1254a(h) ....................................................................................................... 5

8 U.S.C. §§ 1101 et seq. ................................................................................................ 3

8 U.S.C. 1181 ................................................................................................................. 5

8 U.S.C. 1254a(f)(4). ..................................................................................................... 5

**Regulations**

U.S. Citizenship and Immigr. Servs., PA-2019-12, *Policy Alert: Effect of Travel Abroad by Temporary Protected Status Beneficiaries with Final Orders of Removal*, at 1 (Dec. 20, 2019), https://perma.cc/DT8L-QVE7 ....................................................................................... 2

**Internet**

*About the Policy Manual*, USCIS Policy Manual, https://www.uscis.gov/policy-manual (last visited December 7, 2020) ...................................................................................................... 8

*AMICUS* **IRLI'S MEMORANDUM OF LAW IN SUPPORT OF**
**DEFS.' MOTION TO DISMISS**

iii

**IDENTITY AND INTEREST OF *AMICUS CURIAE***

*Amicus curiae* Immigration Reform Law Institute ("IRLI") seeks the Court's leave to file this brief for the reasons set forth in the accompanying motion.[1]  IRLI is a nonprofit 501(c)(3) public-interest law firm incorporated in the District of Columbia.  IRLI is dedicated to litigating immigration-related cases on behalf of and in the interests of, United States citizens and lawful permanent residents, and to assisting courts in understanding and accurately applying federal immigration law.  IRLI has litigated or filed *amicus* briefs in many important immigration cases. For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's affiliate, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law.  For these reasons, IRLI has direct interests in the issues here.

**INTRODUCTION**

This case concerns the temporary protected status program that protects certain otherwise removable aliens from being returned to their home country.  In December 2019, United States Citizenship and Immigration Services ("USCIS")  issued a policy alert ("TPS Policy Alert"), stating its intention to update current guidance in the USCIS Policy Manual.  In the TPS Policy Alert, USCIS clarified that under the Immigration and Nationality Act ("INA"), an alien with temporary protected status ("TPS") who returns to the United States following authorized travel abroad "remains in the same exact immigration status and circumstances as when he or she left the United States."  U.S. Citizenship and Immigr. Servs., PA-2019-12, *Policy Alert: Effect of Travel*

---

[1]    Consistent with Fed. R. App. P. 29(a)(4)(E), counsel for *amicus curiae* authored the motion and brief in whole, and no counsel for a party authored the brief in whole or in part, nor did any person or entity, other than the *amicus* and its counsel, make a monetary contribution to preparation or submission of the brief.

*AMICUS* **IRLI'S MEMORANDUM OF LAW IN SUPPORT OF**                                                      1
**DEFS.' MOTION TO DISMISS**

*Abroad by Temporary Protected Status Beneficiaries with Final Orders of Removal*, at 1 (Dec. 20, 2019), https://perma.cc/DT8L-QVE7.  The TPS Policy Alert ensures that aliens who have been ordered removed or deported are not permitted to alter their immigration status simply by returning to the United States following authorized foreign travel.  Plaintiffs challenge this operational guidance on several grounds, including that it prevents them from receiving adjustment of status.

## SUMMARY OF ARGUMENT

The INA grants temporary protection to aliens from countries where events such as war, natural disasters, and "extraordinary and temporary conditions in the foreign state . . . prevent aliens who are nationals of the state from returning to the state in safety."  8 U.S.C. § 1254a(b).  The provision creates a *temporary* relief from removal for aliens who meet statutory requirements, but it does not change an illegal alien's immigration status or serve as a pathway to status adjustment.  8 U.S.C. § 1254a(f).  Despite the temporary nature of their status, Plaintiffs allege that the TPS Policy Alert is a violation of federal law because it prevents them from petitioning USCIS for adjustment.  In so claiming, however, plaintiffs misconstrue the INA and immigration law in general.  Congress established specific requirements and procedures for aliens seeking to adjust their immigration status, and the provisions establishing TPS are not intended to facilitate that adjustment.  The TPS program provides *temporary* relief from removal only; it is not a pathway to citizenship or other status adjustment.

Also, IRLI agrees with Defendants that the TPS Policy Alert and subsequent policy manual update are mere operational guidance intended to ensure proper implementation of the statutory requirements in the INA.  Clearly intended, and functioning, as nonbinding operational guidance, they are exempted from notice and comment rulemaking requirements.

## ARGUMENT

I.    **The Plain Language of the INA Makes Clear That Temporary Protected Status Does Not Provide a Mechanism for Adjustment of Status.**

Congress exercised its plenary power over immigration to enact, in the INA and its subsequent amendments, a complex series of rules, requirements, and procedures regarding aliens. Codified at Title 8 of the United States Code, the INA covers topics such as admission, refugees, availability of public benefits, border security, and adjustment of status. *See generally* 8 U.S.C. §§ 1101 et seq. The operational guidance issued by USCIS merely restates what the plain language and structure of the INA make clear, that a grant of temporary protected status is a limited and discretionary benefit and does not impact an individual's prior or subsequent immigration status. *See* 8 U.S.C. § 1254a(c)(2)(B) (providing criteria to exclude otherwise eligible aliens from the TPS designation); 8 U.S.C. § 1254a(e) (excluding the duration of temporary protected status from an alien's continuous physical presence required for adjustment or cancellation of removal).

The plain language of the statute is often the beginning and end of the analysis. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In applying settled principles of statutory construction, we look first to the particular statutory language at issue."). The "cardinal rule" of statutory interpretation instructs courts to consider the provision in question as part of the statute as a whole instead of analyzing each provision individually. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (courts must consider "the broader context of the statute as a whole"); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("The meaning of statutory language, plain or not, depends on context."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) ("in expounding a statute, we . . . look to the provisions of the whole law, and to its object and policy."). If "Congress has directly spoken to the precise question at issue" and the "intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the

*AMICUS* IRLI'S MEMORANDUM OF LAW IN SUPPORT OF                                    3
DEFS.' MOTION TO DISMISS

unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  Finally, it is important for courts to "defer to an agency's statutory interpretations not only because Congress has delegated law-making authority to the agency, but also because the agency has the expertise to produce a reasoned decision."  *Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 660 (D.C. Cir. 2011).  This is especially true where the agency's actions are explicitly approved of by the statute in question.

The TPS Policy Alert is consistent with the INA because it affirms what Congress has explicitly enacted—that a designation of temporary protected status was *not* intended as a mechanism for illegal immigrants to gain entry into the U.S. or to obtain legal status.  The statute enables certain aliens to legally live and work in the United States until such time as they may be safely removed to their country of origin or they otherwise obtain an adjustment of status.  8 U.S.C. § 1254a(a).  Furthermore, as a discretionary benefit, there are certain restrictions that may block otherwise eligible aliens from receiving TPS.  *See Barton v. Barr*, 140 S. Ct. 1442, 1452 (2020) (explaining that "protection from removal because of temporary protected status" is not available to aliens who have convictions under § 1182(a)(2) of the INA.).  *See also Duron v. Stul*, 724 F. App'x 791, 795 (11th Cir. 2018) (internal quotations omitted) (emphasis added) ("Because we presume that Congress said what it meant and meant what it said, we conclude that the lawful-status benefit applies *only* to the period of time in which the alien has TPS, not to any prior period of unlawful status.").

Congress made it clear that unlike asylum, which is available to aliens who are seeking admission due to a need to escape their home country, TPS is a *temporary* discretionary program for aliens already within the U.S. who cannot be safely returned to their home country, not a basis for admission.  8 U.S.C. § 1254a(c)(5) ("Nothing in this section shall be construed as authorizing

*Amicus* IRLI's Memorandum of Law in Support of
Defs.' Motion to Dismiss

4

an alien to apply for admission to, or be admitted to, the United States in order to apply for temporary protected status"). In fact, Congress included a provision within the TPS statute that shows its intent that TPS not be used as a method of status adjustment. 8 U.S.C. § 1254a(h) (prohibiting the Senate from "consider[ing] any bill, resolution, or amendment that provides for adjustment to lawful temporary or permanent resident alien status for any alien receiving temporary protected status under this section.").

Furthermore, when considered in the context of the INA as a whole, adjustment of status and temporary protected status are separate and independent immigration benefits and should be treated as such. *See, e.g.*, 8 U.S.C. § 1181 ("Admission of immigrants into the United States"); 8 U.S.C. § 1254a ("Temporary Protected Status"); 8 U.S.C. 1255 ("Adjustment of status of nonimmigrant to that of person admitted for permanent residence"). Authorized travel undertaken by aliens under the TPS program is in no way connected to adjustment of status, it is merely a benefit associated with TPS. 8 U.S.C. § 1254a(f)(3) ("During a period in which the alien is granted temporary protected status . . . the alien may travel abroad with the prior consent of the Attorney General."). As the Supreme Court explained,

> [w]here "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions," courts should not read one part of the legislative regime (the INA) to provide a different, and conflicting, solution to a problem that has already been specifically addressed elsewhere in the federal immigration regime.

*Negusie v. Holder*, 555 U.S. 511, 545-46 (2009) (quoting *Varity Corp.* v. *Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting). *See also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (noting the importance of "the language and design of the statute as a whole."). Therefore, the statute is clear that TPS aliens returning from authorized travel are not undertaking any action that

would alter their immigration status in a way that would allow them to apply to USCIS for adjustment.

Although the provision does reference adjustment and change of status, it does so to clarify that aliens who have TPS are in lawful nonimmigrant status.  8 U.S.C. § 1254a(f)(4).  In fact, because the provision for adjustment of status, 8 U.S.C. § 1255, is so complex and comprehensive, it can be concluded that if Congress wanted to make a connection between authorized travel of TPS aliens and their ability to apply for adjustment upon their return, it would have done so.  Both the Eleventh and Fifth Circuits have made clear that the lawful status provided to an alien with TPS does not alter the statutory provisions for status adjustment.  *See Serrano v. United States AG*, 655 F.3d 1260, 1265 (11th Cir. 2011) ("That an alien with Temporary Protected Status has 'lawful status as a nonimmigrant' for purposes of adjusting his status does not change § 1255(a)'s threshold requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled."); *Melendez v. McAleenan*, 928 F.3d 425, 429 (5th Cir. 2019) ("The statute does not read that aliens who now hold TPS should be regarded as 'having been in and maintained' lawful status.  What rights and status the alien had prior to the TPS period are the creatures of other statutes or rules.").

For these reasons, it stretches the bounds of the statute to interpret the provision as though Congress meant to allow TPS beneficiaries to alter their immigration status by obtaining authorization to travel outside of the U.S.

II.   **The USCIS Guidance is Exempt From Notice and Comment Rulemaking Procedures Under the Administrative Procedure Act.**

Plaintiffs' assertions that the TPS Policy Alert and subsequent update to the USCIS Policy Manual violate the Administrative Procedure Act ("APA") are without merit.  As nonbinding operational guidance, they are exempted from notice and comment rulemaking requirements.

Plaintiffs do not challenge a legislative rule, but rather a clear and commonsense guidance statement issued by the agency to aid in proper administration and enforcement of the INA.

The APA exempts certain agency actions from the requirements of notice and comment rulemaking in order to ensure that executive agencies have the ability to provide interpretations and guidance to their employees.  5 U.S.C. § 553(b)(A) ("[T]his subsection does not apply to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.").  Because the TPS Policy Alert is operational guidance issued as an update to the USCIS Policy Manual, it falls into this category and thus is not subject to APA rulemaking procedures.

The Supreme Court has explained that the APA exemption to notice and comment rulemaking applies when a "critical feature of" a rule is that it was "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."  *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995).  Where an agency action is merely explanatory it is not a legislative rule but an interpretive one that lacks the force of law.  *See Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Com.*, 874 F.2d 205, 108 (4th Cir. 1989) (explaining that "courts are in general agreement that interpretive rules simply state what the administrative agency thinks the statute means, and only remind affected parties of existing duties.").

There are several factors for courts to consider when determining whether the § 553(b)(A) exemption is applicable to an agency action.  The D.C. Circuit has instructed courts to look to the impacts of the action as well as to whether the agency expressed any intent that the rule be either legislative or interpretive.  *See Croplife Am. v. EPA*, 356 U.S. App. D.C. 192, 329 F. 3d 876, 883 (D.C. Cir. 2003) (internal citations omitted) ("One line of analysis focuses on the effects of the agency action.  The second line of analysis focuses on the agency's expressed intentions.").  *See also Fla. Power & Light Co. v. EPA*, 330 U.S. App. D.C. 344, 145 F.3d 1414, 1418 (D.C. Cir.

1998) (instructing courts to look to "(1) the Agency's own characterization of the action; (2) whether the Agency published the action in the Federal Register or the Code of Federal Regulations ('CFR'); and (3) whether the action has binding effects on either private parties or the Agency."). Where these factors are satisfied, an agency is exempt from complying with the requirements of § 553(b).

The language of the TPS Policy Alert and USCIS Policy Manual make clear that both are intended and function as operational guidance not subject to APA rulemaking requirements. *See* TPS Policy Alert at 1 (explaining that it was issued to clarify issues regarding authorized travel and that it is intended as guidance); *About the Policy Manual*, USCIS Policy Manual, https://www.uscis.gov/policy-manual (last visited December 7, 2020) (explaining that the policy manual "does not remove discretion" and "does not create any substantive or procedural right or benefit"). Furthermore, as has been explained, the TPS is a distinct part of Congress's comprehensive and complex system of immigration rules that was not intended to provide aliens with alternate pathways to adjustment of status. TPS aliens did not have any right or access to adjustment of status prior to the updated guidance so they did not lose any rights as a result of the update. The TPS Policy Alert and subsequent update to the USCIS manual do nothing more than restate this to ensure that all potentially impacted parties understand the TPS program and how it works in conjunction with other provisions of the INA.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Dated: December 11, 2020                     Respectfully submitted,


                                             /s/ *Christopher J. Hajec*
                                             Christopher J. Hajec (D.C. Bar No. 492551)
                                             Gina M. D'Andrea (D.C. Bar No. 1673459)
                                             Immigration Reform Law Institute
                                             25 Massachusetts Ave NW, Suite 335
                                             Washington, DC 20001
                                             Telephone: (202) 232-5590
                                             Fax: (202) 464-3590
                                             Email: chajec@irli.org

                                             *Counsel for Amicus Curiae Immigration*
                                             *Reform Law Institute*